**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTINE ISAAC,** | ) | **CASE NO.  1:06CV1591** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | **OPINION AND ORDER** |
| **RISER FOODS COMPANY d/b/a etc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Motion (ECF DKT #16) of Defendant,

Riser Foods Company d/b/a Giant Eagle ("Riser"), for Summary Judgment.  For the following

reasons, the motion is granted.

## I. FACTUAL BACKGROUND

Riser operates a chain of grocery stores in Northern Ohio.  At all pertinent times,

Plaintiff, Christine Isaac, was employed by Riser as a deli clerk in Store No. 204 located in

North Royalton, and was a member of United Food and Commercial Workers Union Local No.

880 Meat Division.  In conjunction with her employment, Plaintiff acknowledges receiving a

copy of the employee handbook.  (Isaac Deposition, ECF DKT #19, pp. 21-23).  The Employee

Purchase Policy, contained in that handbook, prohibits employees from weighing or pricing any products which they intend to purchase for their own use.  (Isaac Deposition, ECF DKT #19, Exhibit C).  Furthermore, violation of the purchase policy rules "will lead to disciplinary action up to, and including, termination."  *Id.*  Plaintiff alleges she was wrongfully accused of making an improper employee purchase on August 7, 2004.[1]  Plaintiff also alleges she received a work-related injury in 2004, and has a pending worker's compensation claim for carpal tunnel syndrome.  Further, Plaintiff alleges she was wrongfully discharged; while substantially younger employees and non-disabled employees, who had committed similar company rule/policy infractions, were retained.  Specifically, Plaintiff asserts claims for Handicap Discrimination (Ohio Revised Code Section 4112.99); Violation of Public Policy; Intentional Infliction of Emotional Distress; and Age Discrimination (Ohio Revised Code Section 4112.99).

On June 29, 2006, Defendant filed its Notice of Removal of Plaintiff's state court Complaint (Cuyahoga County Common Pleas Court Case No. 06-592570), contending original jurisdiction lies with United States District Court, since Plaintiff's claims require interpretation of the Collective Bargaining Agreement and are preempted under § 301 of the Labor Management Act of 1947 as amended, 29 U.S.C. § 185.

On May 7, 2007, Defendant filed its Motion for Summary Judgment, arguing the following: (1) Plaintiff's claim of intentional infliction of emotional distress is time-barred, preempted, and not sustainable under State law; (2) Plaintiff's public policy claim is unavailable because she was covered under the Collective Bargaining Agreement and was not an at-will employee; (3) Plaintiff's age discrimination claim is time-barred; and, even if Plaintiff could

---

[1]    The evidence before the Court demonstrates the alleged violation of the Employee Purchase Policy occurred on August 8, 2004.  Therefore, the Court will treat August 8, 2004 as the operative date.

-2-

demonstrate a *prima facie* case, she cannot establish pretext; and (4) Plaintiff's disability

discrimination claim fails because she is not disabled within the meaning of Ohio Revised Code

Section 4112.01(A)(13); Plaintiff cannot demonstrate a *prima facie* case, since her physical

condition played no role in the decision to discharge her; and if Plaintiff could surmount that

hurdle, she cannot establish pretext.

On June 18, 2007, Plaintiff submitted her Brief in Opposition, insisting genuine issues of

material fact exist with respect to her claims of disability/handicapped discrimination and

intentional infliction of emotional distress.

## II. LAW AND ANALYSIS

### Standard of Review

### Motion for Summary Judgment

A summary judgment should be granted only if "the pleadings, depositions, answers to

interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of

fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

The burden is on the moving party to conclusively show no genuine issue of material fact exists,

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339,

1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most

favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party

may not rest on its pleadings, but must come forward with some significant probative evidence

to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347; *Lee v. Ritter*, No.

1:02-CV-282, 2005 WL 3369616, at *2 (E.D. Tenn. Dec. 12, 2005).  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass'n*., 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323; *Lee*, 2005 WL 3369616, at *2.  Stated differently, "the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely."  *Davis v. City of East Cleveland*, 2006 WL 753129 (N.D. Ohio March 22, 2006) (citing *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F.Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001))).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment.  See *Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

        In her Brief in Opposition to Defendant's Motion for Summary Judgment, Plaintiff Christine Isaac designates no specific facts nor presents any legal authority in support of the elements of her age discrimination claim or her discharge in violation of public policy claim. Since no genuine issue is created on these two claims, judgment in favor of Defendant is wholly

-4-

appropriate.  "[T]he 'mere possibility' of a factual dispute is not enough. Rather, in order to

defeat summary judgment a plaintiff must come forward with more persuasive evidence to

support [his or her] claim than would otherwise be necessary. Where the defendant demonstrates

that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence

beyond the bare allegations of the complaint to support an essential element of his or her case,

summary judgment should be granted."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 581 (6th

Cir.1992).

**Disability/Handicap Discrimination**

Pursuant to Ohio Revised Code Section 4112.02(A), it is unlawful :

for any employer, because of . . . disability . . . of any person, to discharge without just
cause, to refuse to hire, or otherwise to discriminate against that person with respect to
hire, tenure, terms, conditions or privileges of employment, or any matter directly or
indirectly related to employment.

In order to establish a claim for disability discrimination, a plaintiff must prove: (1) she

was disabled; (2) that her employer took adverse employment action against her, at least in part

because of her disability; (3) although disabled, she could safely and substantially perform the

essential functions of the job.  *Hood v. Diamond Prods*., 74 Ohio St. 3d 298 (1996) (citing

*Hazlett v. Martin Chevrolet, Inc*., 25 Ohio St.3d 279 (1986)).

Because Ohio's disability discrimination law was modeled after the Americans With

Disabilities Act, 42 U.S.C. § 12112(a), *et seq*. ("ADA"), courts may look to federal regulations

and case law for guidance in interpreting the Ohio law.  *Columbus Civil Serv. Comm'n v.

McGlone*, 82 Ohio St.3d 569, 573 (1998).

Plaintiff Isaac contends she has a disability; however, the disability is not clearly nor

consistently identified.  In her filings before the Ohio Civil Rights Commission, she describes

-5-

herself as suffering pain from hernia repair and neck problems.  (Isaac Deposition, ECF DKT #19, Exhibit O).  However, in her Complaint at ¶ 6, and in her Affidavit (ECF DKT #23-18, ¶¶ 8 & 9), she refers to "a work related wrist injury (carpal tunnel syndrome and bilateral wrist sprain)."

Upon review of the evidentiary materials, the Court notes Plaintiff's deposition testimony and her Affidavit statements conflict.  When asked on deposition about any medical restrictions in effect at the time of her discharge, Plaintiff testified there were no work restrictions in July or August of 2004.  (Isaac Deposition, ECF DKT #19, pp. 33-34).  Moreover, Plaintiff admitted she reported her bilateral wrist strain injury and filed her worker's compensation claim for carpal tunnel syndrome after her August 8, 2004 discharge.  *Id*. at pp. 50-51.

"A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."  *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 619 (6th Cir. 2001) (quoting *Reid v. Sears*, *Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986)).  Plaintiff cannot utilize her Affidavit, therefore, to create an issue of fact to defeat summary judgment on her claim of disability discrimination.

Evidentiary issues aside, neither Plaintiff's neck pain nor her wrist ailment constitutes a disability under the applicable law.  Under the ADA, the term "disability" is defined as a physical or mental impairment, that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment.  42 U.S.C. § 12102(2).  "Major life activities" include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.  29 C.F.R. pt. 1630.2(i).  "Substantially limits" means (1) one is unable to perform a major life

activity that the average person and general population can perform, or (2) one is  significantly restricted as to the condition, manner or duration of performing a particular life activity as compared to that under which the average person in the general population can perform the same major life activity.  29 C.F.R. pt. 1630(j)(1).

When asked at her deposition, Plaintiff testified she drove to work every day during the critical time period in 2004.  She was able to bathe, dress herself, cook, brush her teeth, comb her hair, walk, stand, hear, see, speak, breathe, and learn.  (Isaac Deposition, ECF DKT #19, pp. 51-53). In her Affidavit at ¶ 8, Plaintiff says only: "I am limited in performing many ordinary household functions.  In addition, I am unable to go horseback riding, a hobby that I used to enjoy before my carpal tunnel injury."

It is clear Plaintiff's medical conditions did not substantially limit any major life activity. She was admittedly able to perform a variety of tasks central to most people's daily lives. Plaintiff has failed to demonstrate she was disabled, the first element of her *prima facie* case.

The second element of Plaintiff's *prima facie* case of disability discrimination is a showing that Defendant discharged her in part because of her disability.  Although Plaintiff avers Defendant discharged her because of her disability/handicap, and Defendant was aware of her work-related wrist injury (Isaac Affidavit, ECF DKT #23-18, ¶¶ 8 & 9), she provides no evidence in the record to support those claims.  The Court is not obligated to search the record. See *Street v. J.C. Bradford & Company*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  Moreover, the evidence available in the record before the Court militates against Plaintiff's position.

Plaintiff's first report of wrist injury, according to worker's compensation filings, was August 31, 2004, weeks after the employee pricing incident and Plaintiff's eventual discharge.

-7-

In addition, Defendant provides the Declaration of Larane Hulsman, the Manager of Employee

Labor Relations, who made the decision to discharge Plaintiff Isaac.  (ECF DKT #17, Exhibit 2).

Hulsman declares as follows:

> 6.  I investigated all of Christine Isaac's assertions in connection with the Grievance procedure and after a complete investigation, I concluded to discharge her for violation of the Employee Purchase Policy and other work rules.
>
> 7.  The main thrust of the reason for her termination was that she priced and weighed product in violation of those two elements of the Employee Purchase Policy which prohibit employees from weighing or purchasing [sic] any products they intend to purchase. * * * Those actions were grounds for discharge and I would have discharged her for violating either of those two elements or both.
>
> * * *
>
> 9.  When I discharged Isaac, I did not know that she would subsequently file after her discharge workers' compensation claims, claiming carpal tunnel syndrome and bilateral wrist sprain.
>
> 10.  Her age and physical condition played no role in my decision to discharge Isaac.

Plaintiff offers no controverting evidence, aside from her own self-serving statement, that her

employer knew of her alleged disability or was motivated by that knowledge to terminate her

employment.

Further, as a Union member, Plaintiff had the benefit of representation and advice from

Local 880; but the Union decided not to take the employer to arbitration on the issue of

Plaintiff's discharge.  The evidence shows, on August 8, 2004, the Store Manager, Brian

Gillespie, issued an Incident Report, suspending Plaintiff Isaac pending further investigation of a

violation of the employee purchase policy.  (Isaac Deposition, ECF DKT #19, Exhibit G).  On

August 12, 2004, the Union filed a grievance on Plaintiff's behalf.  (Isaac Deposition, ECF DKT

#19, Exhibit H).  On the following day, Defendant advised Plaintiff her suspension had been

converted to a termination for violation of company policy and the work rules.  (Isaac

-8-

Deposition, ECF DKT #19, Exhibit I).  After a meeting with Plaintiff, agents of the employer and Union representatives, and upon investigation and review of the facts, the company's position did not change: "Ms. Isaac's file reflects termination for violation of company policy and work rules.  The Company considers this grievance closed."  (Isaac Deposition, ECF DKT #19, Exhibit J).  Thereafter, the Union declined to arbitrate Plaintiff's discharge.  (Isaac Deposition, ECF DKT #19, p. 32; Isaac Affidavit, ECF DKT #23-18, ¶ 6).

Once again, Plaintiff is unable to demonstrate Defendant discharged her, even in part, because of her disability.  Plaintiff's *prima facie* case of disability discrimination fails, and Defendant is entitled to summary judgment in its favor.

**Intentional Infliction of Emotional Distress**

In her Third Claim for Relief, Plaintiff alleges Intentional Infliction of Emotional Distress.  To succeed with this cause of action, Plaintiff must establish: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' 3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'"  *Williams v. York International Corp.*, 63 F.App'x 808, 813 (6th Cir. 2003) (quoting *Pyle v. Pyle*, 11 Ohio App.3d 31 (1983)) (internal citations omitted).

Plaintiff Isaac testified on deposition that she was treated unfairly.  She felt she was wronged; and people looked at her like she was stealing things when she was not.  (Isaac

Deposition, ECF DKT #19, pp. 77-78).  Additionally, in her Affidavit at ¶ 11, Plaintiff avers:

"[M]y discharge from employment caused me to experience loss of sleep, loss of appetite,

depression, fear of the future and other emotional distress."  None of the conditions of which

Plaintiff complains is so serious or severe that "a reasonable person, normally constituted, would

be unable to cope adequately with the mental distress generated by the circumstances of the

case."  *Godfredson v. Hess & Clark, Inc.*,173 F.3d 365, 376 (6th Cir. 1999) (quoting *Reynolds v.

Winger, Inc.*, 86 Ohio App.3d 742 (1993)).  "[T]o say that Ohio courts narrowly define 'extreme

and outrageous conduct' would be something of an understatement."  *Baab v. AMR Services

Corp.*, 811 F.Supp. 1246, 1269 (N.D.Ohio 1993).  With such stringent constraints defining

tortious conduct, this issue is appropriate for summary judgment disposition.  Thus, the Court

finds Plaintiff Isaac has not satisfied the elements of an intentional infliction of emotional

distress cause of action; and Defendant's Motion is granted on this claim.

### III. CONCLUSION

After careful review of the evidence presented by both parties, and upon consideration of

the applicable law and pertinent arguments raised in the briefs, this Court finds Plaintiff,

Christine Isaac, abandoned her age discrimination and wrongful discharge in violation of public

policy claims; and, furthermore, has failed to demonstrate a genuine issue of material fact

remains for a jury's consideration on her claims of disability discrimination and intentional

infliction of emotional distress.  Therefore, the Motion of Defendant, Riser Foods Company

d/b/a Giant Eagle, for Summary Judgment is granted in its entirety.

**IT IS SO ORDERED.**

**DATE: April 28, 2008**

         **S/Christopher A. Boyko**

        **CHRISTOPHER A. BOYKO**

        **United States District Judge**